THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 2:93CR00215 DS-1 |
| Plaintiff, | ) | |
| | ) | ORDER ADDRESSING DEFENDANTS' MOTION UNDER 28 U.S.C. 1651 FOR AUDITA QUERELA |
| | ) | |
| BRUCE DEREK SPRING | ) | |
| Defendant. | ) | |
| | ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Before the Court is Defendant's Motion Under 28 U.S.C. 1651 For *Audita Querela*. The basis for this motion is Defendants' claim that the decisions *United States v. Holloway* and *United States v. Washington* constitute an intervening change in the law and render the judgment of his sentence infirm. Defendant now moves to have the granting of the writ of *audita querela* presented to the Court for consideration.

## I. RELEVANT FACTS

Defendant Bruce Spring requests that this Court dismiss remaining counts of conviction and reevaluate the length of his sentence in light of recent rulings *United States v. Holloway*, 2014 W.L. 1942923 (E.D. N.Y.) and *United States v. Washington*, Lexis 134666 (S.D. N.Y.). In the cases cited, as well as others, the Defendant sees a judicial trend toward reducing long sentences because they are "unjust," and has brought forth character evidence to prove that his own sentence falls under the unjust category. (Docket No. 216).

In 1993, the Defendant was charged with eleven counts under 18 U.S.C. § 924 (c) for two separate bank robberies as well as related firearms offenses. (Docket No. 12). In September of

1

the same year, the Defendant was ultimately convicted on all eleven counts, though the eleventh count was later dismissed. (Docket No. 185). Two of the remaining counts, relating to the use and carrying of firearms in certain crimes, carried a mandatory sentence. While the Court chose lengths in the lower range of the Sentencing Guidelines, the guidelines were adhered to and the Defendant was sentenced to an aggregate of 802 months.

A direct appeal followed the sentencing, in which the Defendant challenged the Court's findings that the Defendant was an armed career criminal and a career offender. Though count eleven was dismissed, the Tenth Circuit affirmed the rest of the Defendant's sentence in its entirety. In 1998, Defendant filed for relief under 28 U.S.C. §2255 claiming that he had ineffective counsel at the appellate level. (Docket No. 195).

More recently, on July 2, 2013, Defendant argued in a letter that the Supreme Court's ruling in *Alleyne v. United States*, 133 S. Ct. 2151 (2013) required this Court to reduce his sentence. The motion was denied and the court concluded that *Alleyne* had "no bearing on the minimum mandatory sentences" in the Defendant's case. (Docket No. 203).

In August of last year, the Defendant filed a writ of *audita querela*, claiming that the recent ruling in *United States v. Smith*, 756 F.3d 1179 (10th Cir. 2014) required this Court to reduce his sentence. (Docket No. 207). The Defendant argued that the ruling in *Smith* mandated that the court consider the aggregate sentence the convicted would have to serve when determining the minimum sentence for each crime. And while the Defendant acknowledged that a writ of *audita querela* is extremely rare, he claims the recent rulings in the Tenth Circuit manifest an "intervening change of law," Rawlins v. Kansas, 714 F.3d 1189 (10th Cir. 2013), so as to warrant the writ. In the intervening months, there have been various time extensions, a

substitution of counsel, and a memorandum written by the Government in opposition to the Defendant's request for a writ of *audita querela*.

Defendant now brings forth what he considers to be further persuasive authority regarding 18 U.S.C. § 924 (c) that would compel this Court to reduce his sentence. The rulings of *Holloway*, 2014 W.L. 1942923, and *Washington*, 2014 Lexis 134666, the Defendant argues, manifest a new trend in judicial sentencing that would remove any limitation on the discretion of the court when determining criminal sentences. Removing this discretion would, he claims, allow this Court to consider a myriad of personal factors in Defendant's case that would warrant a reduction in his sentence.

## II.  ANALYSIS

Considering the recent ruling in other federal courts, Defendant argues that this Court should be able to remove all boundaries on its discretion and reduce Defendant's sentence upon a grant of writ of *audita querela*. This is a question of law, rather than one of fact, thus, in order for the Defendant to succeed on his original motion, (1) a previously-correct judgment must be made unjust by intervening law that "arise[s] after [the judgment's] rendition," *Rawlins*, 714 F.3d at 1193, and (2) the Defendant must not have any other remedy available to him. *Torres*, 282 F.3d. at 1245. Only then, would this Court take the recent rulings from other federal courts into consideration.

### A. Historical Background

To grant the nearly totally abolished writ of *audita querela*, (1) a previously-correct judgment must be made unjust by intervening law that "arise[s] after [the judgment's]

rendition," *Rawlins*, 714 F.3d at 1193, and (2) no other remedy is available to the Defendant.
*Torres*, 282 F.3d at 1245.

Before discussing the requirements for a writ of *audita querela*, historical background of
the writ is helpful to understand when and why the writ is granted. This writ was introduced in
England nearly seven-hundred years ago to pardon debtors who had paid their debts since
imprisonment and spare them execution. *See* THEODORE F.T. PLUCKNETT, A CONCISE HISTORY
OF THE COMMON LAW 394 (5th ed. 1956). In subsequent centuries, the writ came to be applied
more generally in cases where it would be unjust to allow a judgment to stand. WILLIAM
BLACKSTONE, COMMENTARIES 405–06 (1809). Although the writ was abolished in the Federal
Rules, FED. R. CIV. P. 60(e), it remains only "sometimes available," Trenkler v. United States,
536 F.3d 85, 90 n.2 (1st Cir.2008), in extraordinary circumstances. *See* United States v. Nedelcu,
519 Fed. Appx. 980, 985 (10th Cir. 2013) (stating that a defendant's acts after conviction, though
laudable, have "no bearing on the availability" of a writ of *audita querela*). However, some
courts have stated that the writ of *audita querela*'s contemporary purpose could be when there is
a gap of necessary relief that is not served by federal postconviction motions. United States v.
Kimberlin, 675 F.2d 866, (7th Cir. 1982), *cert. denied*; *see* United States v. Acholonu, 717
F.Supp. 709, 710 (D.Nev.1989); United States v. Ghebreziabher, 701 F.Supp. 115, 116–17
(E.D.La.1988); United States v. Salgado, 692 F.Supp. 1265, 1269 (E.D.Wash.1988).

## B. Intervening Law Arising After Judgment

Even though there are some instances where granting a writ of *audita querela* is proper,
courts agree that an intervening law has to have rendered an originally correct judgment infirm.
Indeed, the intervening law must do more than simply tip the scales of equity. United States v.

4

Ayala, 894 F.2d 425, 429 (D.C. Cir. 1990). In *Ayala*, a Peruvian national was originally charged

with distribution of 500 mg cocaine, as well as conspiracy to distribute cocaine. *Id.* at 426. After

a successful plea bargain, Ayala pled guilty to conspiracy to distribute cocaine in order to have

the distribution charges dropped. *Id.* He was subsequently convicted and sentenced to two years'

imprisonment and four years' special parole. *Id.* While Ayala was imprisoned, the INS

commenced deportation proceedings against him under legislation that authorized the

deportation of any alien convicted of a conspiracy to violate a law regarding any controlled

substance. *Id.* at 427. Ayala subsequently filed a motion that claimed because he was not aware

of this law prior to his plea agreement and "had furnished and continued to furnish assistance to

the Government in its efforts to prosecute other drug defendants," deportation "would cause

undue suffering to him" and go against what equity required. *Id.* While Ayala's case was based

on cases that said the writ of *audita querela* rested in restoring equity, the D.C. Circuit did not

agree and maintained that the writ should be granted on legal, rather than equitable, grounds. *See*

*id.* at 429; *see also* Doe v. I.N.S., 120 F.3d 200 (9th Cir. 1997); United States v. Reyes, 945 F.2d

862, 866 (5th Cir.1991); United States v. Holder*,* 936 F.2d 1, 3 (1st Cir.1991); and United States

v. Ayala*,* 894 F.2d 425, 426 (D.C.Cir.1990).

　　　　Similarly, in *Rawlins* the court acknowledges that in order for a writ of *audita querela* to

be granted, the action needs to be brought "because of matters arising subsequent to the rendition

thereof." *Rawlins*, 714 F.3d at 1193 (quoting Oliver v. City of Shattuck ex rel. Versluis*,* 157 F.2d

150, 153 (10th Cir.1946)). Rawlins was convicted of battery of a police officer, but because the

pictures of the injuries she received from the police officer were not shown during her original

trial, she sought appeal while she was in custody. *Rawlins*, 714 F.3d at 1191. However, because

of unexplained delays, her appeal was not addressed until she was no longer in custody and,

thus, no longer able to use the § 2254 petition for relief. *Id.* at 1192. In an attempt to avoid this procedural setback, Rawlins filed for a writ of *audita querela*. *Id.* Nevertheless, because her complaint was essentially still a § 2254 petition and did not suggest that there had been any intervening change of law to render her original conviction infirm, she abandoned her attempts at a writ of *audita querela*. *Id.*

The case law is not entirely bereft, however, with instances where the court has decided to grant a writ of *audita querela* on grounds of equity rather than due to an intervening change in the law. For instance, *United States v. Salgado* involved a plaintiff who had lived a relatively peaceful life as a United States resident, though not a naturalized citizen, and when he was found to be in the country illegally—though he believed that he was legal—he was subjected to deportation proceedings and would not be eligible for amnesty. 692 F. Supp. 1265, 1267 (E.D. Wash. 1988). Due in part to the fact that there was "a grand total of one published decision in modern times" concerning the writ of *audita querela*, the *Salgado* court used a broad interpretation of the writ and decided that it could be used when the "*consequences* of the judgment" were not equitable. *Id.* at 1269 (emphasis in original). Therefore, the court decided that a refusal of a writ of *audita querela* would unfairly deprive Salgado of the "newly created rights which he would otherwise clearly be entitled to," and thus held that the writ be granted. *Id.*

But the reasoning of the *Salgado* court was specifically rejected in cases decided shortly after *Salgado* and the opinion no longer represents good law. *Reyes,* 945 F.2d at 866; *Holder,* 936 F.2d at 3; *Ayala,* 894 F.2d at 429. In *Holder*, the court relied on BLACK'S definition of the writ of *audita querela* and a respect for the legislature's intention that the laws be applied as they are written and decided that *Salgado*'s reasoning should be rejected. *Holder,* 936 F.2d at 5.

Instead, the *Holder* court decided that granting a writ of *audita querela* should be solely based on an intervening law rather than a determination of equity. *Id.* Furthermore, the reasoning in *Holder* is congruent with the vast majority of other federal opinions. United States v. Fonseca–Martinez*, 36 F.3d 62, 64 (9th Cir.1994) ("every court of appeals to consider the question has ruled that, as a matter of law, the writ of *audita querela* is not available to vacate an otherwise valid conviction for solely equitable reasons"). While this Court previously agreed with *Ejelonu v. I.N.S. Department of Homeland Securities*, another case that decided a writ of *audita querela* may be granted on equitable grounds, that decision went unpublished and the *Ejelonu* opinion was quickly vacated. Villafranco v. United States, 2006 WL 1049114, at 11 (D. Utah 2006); Ejelonu v. I.N.S. Dept. of Homeland Sec., 355 F.3d 539 (6th Cir. Jan. 8, 2004) *vacated en banc* 355 F.3d 539 (6th Cir.).

Because of the relative rarity of its finding, it is difficult to determine what exactly constitutes an intervening change of law for purposes of granting a writ of *audita querela*. However, determining what an intervening change of law is *not* comes a little closer to revealing what this change of law actually is, and the aforementioned opinions seem to make it clear that an intervening change in law is not rooted in equity. *Ayala*, 894 F.2d at 429 ("the so-called "pure equity" variant of *audita querela* finds no support in the historical definition of the writ"). Instead, the change of law must create some "legal defect" in the conviction. *Id.* at 428.

In order for the Defendant's writ of *audita querela* to succeed, the opinions of *Holloway* and *Washington* that the Defendant cited must amount to an intervening change of law. This is likely an insurmountable task, since the cases are not controlling authority for this Court and

thus a conflicting decision with the Defendant's original sentencing will not render the judgment infirm.

An opinion in one district court is not binding precedent upon another district court. The United States Constitution establishes that this country has a hierarchy of courts, with lower courts following the decisions of higher courts. U.S. CONST. art. III § 1. In this system, federal district courts are not obligated to follow decisions of other federal district courts. Camreta v. Greene, 131 S. Ct. 2020, 2033 (2011). In fact, "[a] decision of a federal district judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Id.* (internal quotations omitted).

While a decision in another district court might not be binding precedent, it can, however, be persuasive to a judge of this Court when the opinion is based on sound judicial principles, there is not enough binding authority to make a reasoned decision, and the facts of the non-binding opinion are so similar to the facts at hand that they are an effective analysis. The level of persuasion is often based on factors such as thorough logical reasoning, consistency with other opinions, faithfulness to the Constitution, a sensible reading of any statutes, and adhesion to the spirit of the applicable area of law. Jones v. Bell, 2008 WL 495317, 3 (W.D. Mich. 2008). Opinions of non-binding authority can be used as a point of reference when there is a general dearth of binding authority in a narrow area of the law. Chadwick v. Pillard, 536 F. Supp. 73 (E.D. Tenn. 1982); Smith v. Astrue, 639 F. Supp. 2d 836, 842 (W.D. Mich. 2009). In addition, non-binding authority can be helpful when there is a unique fact situation that is more closely tailored to the facts in the issue at hand than any other binding authority. Korn v. Paul Revere Life Ins. Co., 2005 WL 2932073, 5 (E.D. Mich. 2005) (Cleland, J.) ("[the case's] predicates

8

were, in fact, so close to the instant case as to convince this court that an identical analysis should be applied and that such analysis was determinative").

The opinion in *Holloway* does not constitute binding precedent on this Court, and it is sufficiently different so as to distinguish its applicability to this case. *Holloway* concerns a man who the judge considers has an "unduly severe" sentence because of a lack of a plea bargain, potential racial bias, family commitments, and prison activity. *Holloway*, 2014 W.L. 1942923 (E.D. N.Y.). Thus, these factors are taken into consideration when deciding whether or not to reopen Holloway's collateral challenge to his conviction. *Id.* However, the honorable judge in the *Holloway* case did not rule that sentences as long as Holloway's should always be reduced, or even that they should always be considered for reduction. *See id.* Instead, the court requested that the United States Attorney "consider exercising her discretion to agree to an order vacating two or more of Holloway's § 924(c) convictions." *Id.* at 2.

In addition, *Washington*'s holding does not create binding legal authority or an intervening change of law. Washington was charged and convicted with various robbery, narcotics, and firearm offenses in 2011 after a string of arrests and convictions. *Washington*, 2014 Lexis 134666 at 3. Prior to conviction, Washington was offered a plea bargain that would require a sentence of just 120 months if he pled guilty, but if he proceeded to trial, the prosecutors promised they would file a prior felony information and a Third Superseding Indictment, which would increase the mandatory minimum sentence to fifty-two years upon conviction. *Id.* at 4. Washington proceeded to trial and after he was found guilty and sentenced, his counsel requested a court-ordered evaluation of Washington's cognitive ability due to some information about the defendant that surfaced ten days after sentencing. *Id.* at 8. Although the court considered the claim that Washington was incompetent to accept or reject the plea

agreement, it ultimately found that the defendant was competent and adequately represented. *Id.* at 9.

Although the defendant in *Washington* did not succeed in his claim that he was not competent to understand and accept a plea bargain, the court did pontificate on the fairness of the defendant's sentence. *Id.* at 33–34. Even though the sentence was constitutional, the court questioned whether it was just due to the fact that the defendant did not even fire a weapon, much less kill anyone. *Id.* at 34. But because the court did not have the power to reduce the sentence, it deferred to the broad discretion that is granted to the prosecutors in determining just sentences and ordered that the parties appear for sentencing at a future date. *Id.*

While the holding in *Washington* did allow for a potential reduction in sentence, it did not create any new law regarding mandatory minimum sentence lengths that would constitute an intervening change. This holding might persuade a judge in this Court to similarly admonish the prosecutors to do their best in recommending a just sentence, but it certainly does not change the law in a way that would render any previous judgment infirm. The law that the *Washington* court relies on to encourage the prosecutors to assign a just punishment comes from cases that all predate the Defendant's sentencing and even his offenses. *See* Bordenkircher v. Hayes, 434 U.S. 357, 363, (1978); United States v. Goodwin, 457 U.S. 368, 382 (1982); United States v. Stanley, 928 F.2d 575, 581 (2d Cir. 1991). Thus, even if the court in *Washington* had the power to create binding precedent on this Court, *Washington*'s holding would not create a change necessary to grant a writ of *audita querela*.

For further proof that the rulings of *Holloway* and *Washington* do not constitute an intervening change of law sufficient to warrant an *audita querela*, the Supreme Court has held that sentences in excess of forty years "do not offend  the Constitution." *Id.* at 32–33; *see*

10

Bordenkircher v. Hayes, 434 U.S. 357, 363, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978) ("[I]n the 'give-and-take' of plea bargaining, there is no such [constitutionally impermissible] element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer."). Therefore, the prosecution was free to exercise its discretion in determining the Defendant's sentencing and even a sentence as long as sixty-six years does not seem outside the realm of Constitutional possibility. However, it is fundamental to our justice system that the prosecution do its best to determine sentences that are just. *See* Letter from President George Washington to Attorney Gen. Edmund Randolph (Sept. 28, 1789) (on file with the Library of Congress) ("the due administration of justice is the firmest pillar of good Government"). The discretion afforded to the prosecutor can depend on many factors, but is "ill-suited to judicial review." Wayte v. U.S. 470 U.S. 598, 607, (1985). Thus, it is the exception, rather than the rule, for the court to cast judgment on the prosecution's sentencing recommendation.

Additionally, because the Defendant is acting pro se, it is appropriate to conduct research outside the authority he cited to determine the validity of his claims. The closest thing that would amount to an intervening change of law was the invalidation of a statute that made the Sentencing Guidelines mandatory by the Supreme Court in 2005. *United States v. Booker,* 543 U.S. 220 (2005). Subsequent to that decision, the guidelines are not mandatory, but the court is required to explain any departure from the guidelines. Gall v. U.S., 552 U.S. 38, 46. While this invalidation appears to constitute a significant change in law, it did not apply retroactively to finished cases so it does not render the Defendant's sentence infirm. United States v. Leonard, 120 Fed. Appx. 759, 761 (10th Cir. 2005).

The Defendant has offered information to show that his unique circumstances render this opinion unjust. (Docket No. 214, 217). For example, he offers a list of all the classes he has

11

completed to show that he has taken advantage of opportunities to enrich his skillset while in confinement. He outlines his familial situation to emphasize the time he has lost because of his conviction. And, most recently, he has submitted an online petition with more than 300 signatures from people all over the world who support his sentence reduction. However, this information is not legally significant since it does not constitute a change in the law.

Since neither the *Holloway* nor the *Washington* decision are binding legal authority, even if their holdings constituted a change in the law that was applied in Defendant's case, the cases do not represent an intervening change of the law that is required for a writ of *audita querela*. Furthermore, there has been no subsequent change in law that would render the Defendant's case infirm. Thus, the first requirement of a writ of *audita querela* has not been met.

### C. No Other Post-conviction Remedy

If there are other postconviction remedies available to the prisoner, the court cannot grant a writ of *audita querela*.  United States v. Torres, 282 F.3d 1241, 1245 (10th Cir. 2002) (quoting Taveres v. Mass., 59 F. Supp. 2d 152, 155 (D. Mass. 1999). This second requirement to grant the writ has arisen from the idea that *audita querela* is an old common law writ that survives in modern day practice "to plug a gap in the system of federal postconviction remedies." United States v. Kimberlin, 675 F.2d 866, 869 (7th Cir.), *cert. denied,* 456 U.S. 964, (1982).

However, there is some doubt as to whether any gaps in the federal postconviction remedies truly exist. *Id.* Due to the sweeping applicability that a motion to vacate a sentence under 28 U.S.C. § 2255 has, it is unlikely that there will be a time that a prisoner will not be able to avail him or herself of that motion before a writ of *audita querela*. *Id.* Furthermore, a statute,

like § 2255 that "specifically addresses the issue at hand" is controlling over a common law writ. Carlisle v. United States, 517 U.S. 416, 429 (1996) (quotation marks omitted).

Nevertheless, the success or failure of a § 2255 motion does not affect its availability to a prisoner. United States v. Harris, 391 F. App'x 740, 743 (10th Cir. 2010). The mere fact that a Defendant has previously filed a § 2255 motion and was unsuccessful, does not mean that the "procedural avenue has not been available to him." *Id.* Thus, even if a Defendant's "arguments did not warrant merit or he failed to meet the criteria required for authorization to pursue such filings," does not mean that the writ was not available to him or her for purposes of granting a writ like *audita querela* that is supposed to fill the gaps of legislative remedies. *Id.* Instead, the mere existence of a statute as broad as § 2255 likely bars the necessity for a writ of *audita querela*. *Id.*

The second element that is required to grant a writ of *audita querela* is for the Defendant to have exhausted all other avenues of relief. Since § 2255 allows a prisoner in custody to claim a right to be released on the bases that the conviction was unconstitutional, the sentencing court did not have jurisdiction, the sentence exceeded the maximum required by law, or that the sentence is subject to a collateral attack, it is unlikely that the writ of *audita querela* would be necessary for the Defendant. *See* 28 U.S.C. § 2255 (2008). If the Defendant truly believes that his sentence exceeds the length that the law requires, § 2255 would allow him to make that claim rather than use a writ that is intended to fill gaps in the relief system. Not only does § 2255 appear to be sufficiently broad to exclude the Defendant's request for a writ of *audita querela*, but even avenues that have not been successful in the past could bar the Defendant's request. Therefore, the Court finds that the reasoning in *Kimberlin* is correct in assuming that the breadth of § 2255 has eliminated the need for a writ of *audita querela* altogether.

13

## III. CONCLUSION

Although the Defendant has submitted emotive information regarding his conviction, the issue presented is to be decided on a matter of law. The opinions that the Defendant cites as intervening changes of law are not controlling on this Court and do not render the previous judgment infirm. In addition, while *Booker* did invalidate the Sentencing Guidelines' mandatory nature, the decision was not meant to be retroactive and would not apply to the Defendant's judgment. Finally, the second element of the writ not met because § 2255 is so broad as to offer the Defendant other avenues for relief and negate the necessity for a writ of *audita querela*.

ACCORDINGLY, having reviewed the motion and the government's response, the Court denies the Defendant's motion.

DATED this 26TH day of March, 2015.

BY THE COURT:

David Sam
_____

DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT

14